UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JERMAINE SPENCER, | ) | CASE NO. 4:08 CV 1191 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| DAVID BOBBY, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On May 13, 2008 pro se plaintiff Jermaine Spencer filed this action under 42 U.S.C. §1983 against Trumbull Correctional Institution ("TCI") Warden David Bobby, TCI Deputy Warden of Operations Joel Petkovich, TCI Chief of Security Major Tim McConahay, TCI Corrections Officer Probst, TCI Shift Commander Scott Hagy, TCI Institutional Inspector Kim Fredericks, and Ohio Department of Rehabilitation and Correction ("ODRC") Northeast Security Administrator Todd Ishee.  In the complaint, plaintiff alleges that he was subjected to cruel and unusual punishment while at TCI.  He seeks nominal damages of $ 1.00, punitive damages in an unspecified amount, and injunctive relief.

**Background**

Mr. Spencer has had an acrimonious relationship with several corrections officers since his arrival at TCI on September 4, 2007.  His first altercation with an officer occurred on

September 11, 2007.  He indicates that Officer Probst was physically and verbally abusive to him.  Mr. Spencer does not provide a more detailed description of the incident.  He does, however, attach a copy of the incident report that was issued as a result of the altercation.  In the report, Officer Probst states that he was checking inmate identification badges at the cafeteria.  Mr. Spencer's badge was turned so that the information it contained was not visible.  Officer Probst stopped Mr. Spencer and ordered him to turn the badge around so it could be read.  Mr. Spencer became loud and used profanity to indicate that he was aware of the proper manner to display the identification.  The Officer asked to see the identification and Mr. Spencer allegedly replied, "just... [deleted profanity]...touch me [and] you'll see what I'll do."  (Compl. Ex. 10.)  The Officer claimed Mr. Spencer began to advance on him with clenched fists.  He therefore summoned the assistance of other officers and later filed a conduct report against Mr. Spencer.

      Mr. Spencer filed an Informal Complaint Resolution form with Captain Hagy regarding the incident which he describes very differently. (Compl. Ex. 12.) Mr. Spencer contends he was on his way to the cafeteria when he was stopped by Officer Probst and told to turn his identification badge around so the officer could read it.  He claims he complied and then asked the officer if he could pass into the cafeteria as he was apparently outside and it was raining.  He states that Officer Probst refused to allow him to pass and used profanity to tell him not to argue the point.  Mr. Spencer contends that Officer Probst "snatched" his identification and wrote down his information.  Mr. Spencer asked Officer Probst not to address him in that fashion.

      Mr. Spencer and Officer Probst had another altercation on the following day, September 12, 2008. Mr. Spencer encountered Officer Probst on the way to the cafeteria.  He claims that Officer Probst stopped him for no reason, which prompted him ask to see a "white

2

shirt." (Compl. Ex. 11.) He claims he then turned to walk away and was ordered by Officer Probst to return. The two exchanged words and the officer ordered Mr. Spencer to return to his cell. Mr. Spencer instead proceeded into the cafeteria. He was approached by two other officers who had drawn their pepper spray. He was ordered by another officer to return to his cell block. This time he complied. He claimed Officer Probst was trying to provoke an altercation.

An altercation did take place on October 2, 2007. Mr. Spencer was in the yard walking toward Ms. Frederick, the Institutional Inspector, who was standing near the cafeteria talking to another prisoner. Mr. Spencer was unhappy with her response or lack thereof to his grievances. Officer Probst saw the inmate approaching the Institutional Inspector and ordered him to stop. Mr. Spencer did not comply and continued to walk toward Ms. Frederick. The Officer attempted again to stop Mr. Spencer. Mr. Spencer resisted and Officer Probst attempted to physically restrain him. An altercation ensued and Mr. Spencer assaulted the officer. During the fracas, Officer Probst fell to the ground, and Mr. Spencer continued to assault him by kicking and hitting him with fists in the head and neck. The attack on Officer Probst continued until other officers arrived to pull Mr. Spencer away. Officer Probst was taken to the emergency room where it was determined that he had suffered a broken nose, multiple contusions and head and neck injuries. Mr. Spencer was placed in local control and recommended for a security level increase. (Compl. Ex. 24.)

Mr. Spencer states he was told by Officer Overstreet to address his complaints to the Institutional Inspector. He claims that when he attempted to follow this advice, he was attacked by Officer Probst and defended himself. He does not deny assaulting the officer, but contends that TCI officials should also share in the blame for failing to prevent Officer Probst from stopping or

confronting Mr. Spencer.

Finally, November 8, 2007, Mr. Spencer was accused of threatening two other officers. Officer Tatum reported that while trying to assist Officer Banks in securing Mr. Spencer back in his cell, Mr. Spencer got the attention of Captain Franklin and Lieutenant Jamison and stated that he did not want Officer Tatum to be around him. When asked why he made the comment, Mr. Spencer stated that Officer Tatum knew the reason. Mr. Spencer then added that he would take care of the officer. Officer Tatum understood this to be a threat and filed a conduct report against Mr. Spencer.

Mr. Spencer contends that on the morning of the incident, Officer Tatum was going cell to cell in the segregation unit asking inmates if they wanted coffee, but skipped over Mr. Spencer's cell. A food service worker had to ask Officer Tatum to open Mr. Spencer's food slot. He claims that Officer Tatum continued to give him "mean mug stares" and make comments about Mr. Spencer's assault on Officer Probst. Mr. Spencer admits he did ask Captain Franklin to find another officer to escort him to his cell. When the captain inquired about the reason for the request, he stated that the officer knew why he made the request. He claims he also stated to the captain that he "would do what [he] had to do concerning mental and verbal intimidation." (Compl. Ex. 20.) Mr. Spencer claims he was being harassed by other officers because of the assault on Officer Probst.           The plaintiff claims that the defendants have failed to protect inmates at TCI since 1993. He contends that they have or had a celling policy which resulted in the stabbing deaths of inmates. He further contends that there have been excessive uses of force, planting of weapons in cells by officers, and other prisoner abuses. Mr. Spencer further alleges that Ms. Fredericks never rules in favor of the inmate on a grievance. He claims that Officer Probst subjected him to

4

cruel and unusual punishment by "taunting, harassing, assaulting plaintiff and consciously contributing to a hostile climate of risk posed to plaintiff through his pattern of misconduct, in violation of plaintiff's Eighth Amendment rights." (Compl. at 14.) He asserts that Officer Probst discriminated against him on the basis of his race in violation of the Fourteenth Amendment. He states that Captain Hagy and Ms. Fredericks failed to answer plaintiff's grievances in an appropriate manner and therefore had the effect of escalating the situation in violation of the Eighth Amendment. He claims that Deputy Warden Petkovich, Security Chief Tim McConahay, and ODRC Northeast Security Administrator knew or should have known of Officer's Probst propensity to harass inmates and failed to protect the plaintiff. Finally, he claims the defendants in general failed to properly supervise and discipline Officer Probst in violation of the Eighth Amendment. He claims that as a result he has suffered humiliation, emotional distress, property loss, and a distrust of all ODRC employees. He fears that his assault of Officer Probst will adversely impact his work assignments, prison placement, security status, and pending appeals for release.

## Analysis

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; Siller v. Dean, No. 99-5323, 2000 WL 145167 , at *2 (6th Cir. Feb. 1, 2000); see Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial

5

claims).  For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. § 1915A.

As an initial matter, Warden David Bobby, Deputy Warden Joel Petkovich, Security Chief Tim McConahay, Shift Commander Captain Scott Hagy, and ODRC Northeast Security Administrator Todd Ishee are named as defendants in this action simply because they are the employers and supervisor of Officer Probst.  "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999) (citing Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (1989)).  Rather, the supervisors must have actively engaged in unconstitutional behavior.  Id.  Liability, therefore, must lie upon more than a mere right to control employees and cannot rely on simple negligence.  Id.  In order for liability to attach to any of these supervisors, Mr. Spencer must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the behavior.  Id.  Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors.  Id.; see also Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.1995). There are no allegations in the complaint which reasonably suggest that Warden David Bobby, Deputy Warden Joel Petkovich, Security Chief Tim McConahay, Shift Commander Captain Scott Hagy, and ODRC Northeast Security Administrator Todd Ishee, actively participated in the conduct described in the complaint.  The claims against them are dismissed.

Similarly, Institutional Inspector Kim Fredericks is named as a defendant for the manner in which she answered or failed to answer plaintiff's grievances. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199 F.3d. 295, 300 (6th Cir. 1999).  As plaintiff has failed to allege facts to reasonably indicate Ms. Fredericks engaged in any other activities which could give

rise to a constitutional claim, the claim against her is dismissed.

That leaves only the Eighth Amendment claim asserted against Officer Probst. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. Id. Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. Id. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

As a threshold matter, plaintiff fails to establish the objective component of his claim. In his complaint, he asserts only that the officer "stopped, harassed, and verbally abused him." (Compl. at 9.) Verbal harassment and offensive comments are generally not cognizable as constitutional deprivations. See Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987).

Mr. Spencer does allege that Officer Probst attacked him and caused him to defend himself. Although prison officials may often be required to use physical contact to insure prison security, they can violate the Eighth Amendment if the contact represents an "unnecessary and

wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976). At the time the contact occurred, Mr. Spencer had ignored two orders to stop his approach toward Ms. Fredericks. Officer Probst attempted to stop Mr. Spencer in a manner not described in the complaint or any of the attachments. Mr. Spencer responded by punching and kicking the officer even after he was on the ground. He had to be pulled off of Officer Probst by other officers. It was the officer, not Mr. Spencer, that suffered serious injuries. There is no indication in the complaint that this encounter met the criteria for an Eighth Amendment excessive force claim.

Finally, Mr. Spencer includes an equal protection claim against Mr. Spencer. He asserts that Officer Probst targeted him because of his race. There are no facts in the complaint which indicate race was a factor. The equal protection claim is stated only as a legal conclusion. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

**Conclusion**

Accordingly, this action is dismissed pursuant to §1915A. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith**.**

IT IS SO ORDERED.

S/Peter C. Economus - 6/30/08
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE